

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joe Kunschik, Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. 0-3356
Re: Is a private, non-profit
corporation organized under
the laws of the State of
Texas for religious, char-
itable, benevolent and ed-
ucational purposes required
to obtain emigrant agency
license under the provisions
of S. B. No. 127, Acts of
the 41st Leg., 1929, 2nd
C. S., p. 203?

Your written request, addressed to this department,
dated April 3, 1941, requesting an opinion has been received
and considered.

We quote from your letter:

"We shall appreciate your opinion as to
whether a private, non-profit corporation
organized under the laws of the State of Texas
for religious, charitable, benevolent and ed-
ucational purposes would be required to obtain
an emigrant agency license before engaging in
the operation of an emigrant agency.

"This corporation proposes to charge
neither the employee nor the employer any fee
for procuring employment. It contends that be-
cause it is charging no fee for its services
it falls within the exceptions mentioned in
Article 5209, R. C. S., of Texas, * * *.

"It is contended that Article 5209, R. C.
S., must be read into the Emigrant Agency Law
because the Emigrant Agency Law appears in
the same chapter of the statutes as the Employ-
ment Agency Law and because Section 8 of the
Emigrant Agency Law provides that the Emigrant

Honorable Joe Kunschik, Page 2

Agency Act shall be cumulative of the Employment Agency Law.

"In other words, the question may be boiled down to this proposition: Do the exceptions mentioned in Article 5209, R. C. S., apply to emigrant agents or do they apply solely to employment agents transacting an intra-state business?"

The "Employment Agency Law" is set out in Chapter 13 of Title 83 of the Revised Civil Statutes of Texas, 1925, being Articles 5208 to 5221, inclusive.

Article 5208 defines an employment agent. Article 5209, dealing with exceptions to Article 5208, reads:

"The provisions of this chapter shall not apply to agents who charge a fee of not more than two dollars for registration only for procuring employment for school teachers; nor to any department or bureau maintained by this State, the United States Government, or any municipal government of this State, nor to any person, firm, partnership, association of persons or corporation or any officer, or employee thereof engaged in obtaining or soliciting help from him, them or it when no fees are charged directly or indirectly the applicant for help or the applicant for employment; nor to farmers and stockraisers acting jointly or severally in securing laborers for their own use where no fee is collected or charged directly or indirectly, nor to any association or corporation chartered under the laws of Texas conducting a free employment bureau or agency."

The "Emigrant Agents Law" was enacted by Senate Bill No. 127, Acts of the 41st Legislature, 1929, Second Called Session, Page 203. It is found in Vernon's Revised Civil Statutes as Article 5521-a-1.

Section 1 of Senate Bill No. 127 provides:

"Section 1. The term 'emigrant agent' as used in this Act means every person, firm, corporation or association of persons engaged in

Honorable Joe Kunschik, Page 3

the business of hiring, enticing, or solicit-
ing laborers in this State to be employed
beyond the limits of this State and is also
meant to include every person, firm, partner-
ship, corporation or association of persons
maintaining an office to hire, entice, or
solicit laborers to be employed beyond the
limits of this State; and is also meant to
include every person who, as an independent
contractor or otherwise than as an agent
of a duly licensed emigrant agent procures,
or undertakes to procure, or assist in pro-
curing laborers for an emigrant agent; and
every emigrant agent shall be termed and
hold to be doing business as such in each
and every County wherein he, in person, or
through an agent, hires, entices or solicits
any laborer to be employed beyond the limits
of the State."

A part of Section 2 of the above Act, reads:

"Sec. 2. Each emigrant agent shall,
before operating in Texas, secure a State
license as such, on application therefor
to the Commissioner of Labor Statistics of
the State of Texas.  * * *."

Section 3 of the same Act provides:

"Sec. 3. Any person, firm, association
of persons or corporation who shall engage in
the business of an emigrant agent in any coun-
ty in this State without having first filed
with the Commissioner of Labor Statistics of
the State of Texas, an application for license
as emigrant agent as above provided, and/or
without having first paid all state and county
occupation taxes and annual license fee as pro-
vided by law or without having first secured a
state license as above provided, or without hav-
ing first filed certified copy of his state li-
cense with the Tax Collector of such county
as above provided, and/or who does not file
monthly reports as provided by this Act, and/or
who shall engage in the business of an emigrant
agent in any county in this State without first

Honorable Joe Kunschik, Page 4

havivg designated such county as one of the
counties in which he proposes to do such
business in his original or amended applica-
tion to the Commissioner of Labor Statistics
of Texas, shall be guilty of a misdemeanor,
and upon conviction shall be punished by
fine not exceeding $500.00, or by imprison-
ment in the county jail for not exceeding
six months, or by both such fine and im-
prisonment."

Section 7 of the same Act also deals with the scope
of said Senate Bill No. 127 but will not be copied here.

Section 8 of said Senate Bill No. 127 provides:

"Sec. 8.  The provisions of this Act shall
be cumulative of the employment agency laws of
the State of Texas and the employment agency
Laws aforesaid, shall be where consistent, ap-
plicable to the provisions of this Act."
(Underscoring ours)

The Supreme Court of Texas in the case of State v.
Laredo Ice Co., et al, 73 S. W. 951, in construing the effect
of a cumulative provision similar to that in Section 8, supra,
said:

"The fourteenth section of the act of 1899
concerning trusts and monopolies is in this
language:  'The provisions of the foregoing
sections, and the fines and penalties provided
for violations of this act shall be held and
construed to be cumulative of all laws now
in force in this state.'  Counsel for appellees
earnestly contend that the effect of this pro-
vision is to consolidate and to make one law
of the act of 1895 and the act of 1899, and
thereby to give exemption from prosecution
under the law of 1899 to those persons who
are exempted by the provisions of the law of
1895.  The term 'cumulative' indicates an
harmonious coexistence and co-operation,
rather than a consolidation of two things in-
to one.  An amendment to a statute is not
'cumulative' because it repeals and takes
the place of the part of the law that it

amends, thereby becoming a part of the law
amended. It is true that, in seeking the
meaning of language used in a statute, it is
proper to consider all of the acts of the same
legislative body which are in pari materia,
because 'it is supposed that there has been
no change in the legislative intent and pur-
pose,' unless it is manifested by some change
of language. Sutherland, Stat. Constr. 8283.
But this is a rule of construction, merely,
and does not constitute each act a part of
every other act on the same subject. Laws
which are said to be in pari materia are
parts of a common system or policy, but are
not one and the same law. * * *."
(Underscoring ours)

An examination of Senate Bill No. 127 shows that it
was evidently passed to regulate and be applicable to instances
where the prospective employee or emigrant is hired, enticed or
solicited to be employed without the State of Texas. The Em-
ployment Agents Law seems to have been designed to regulate and
be applicable to instances where the prospective employee is to
work in the State of Texas. There is some similarity in several
provisions of the two Acts.

Another rule of statutory construction which we be-
lieve applicable in answering your proposition is stated in the
case of State v. Standard Oil Co., 130 Tex. 313, 107 S. W. (2d)
550, where the court says:

"We are to interpret the language used
in a manner to make all relevant laws harmoni-
ous, if we can, and in a manner consistent
with the public policy of the State, as well
as in the light of the evils sought to be
remedied by the legislation before us."

See also 39 Texas Jurisprudence 171 and cases cited.

The court in Karr v. Baldwin, (Dist. Ct.) 57 Fed. (2d)
252, in upholding the Employment Agents Law against an unconstitu-
tionality attack leveled at the provisions of Article 5209, as
being arbitrary exceptions, made this pertinent statement, which
we think is applicable:

"The farmer or stockraiser or the free
bureau make no charge. They seek immediate

670

> assistance. There is every reason why
> there should be no fraud or overreaching
> in their solicitations or placings. The
> difference between a gratis service and a
> pay service is recognized in such cases as
> Lindsley v. Natural Carbonic Gas Co., 220
> U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369,
> Annotated Cases 912C 160, (and citing many
> other cases) * * *. The State has a right
> to confine its restrictions to those classes
> which it deems need them. If the law hits
> an evil where it is most felt the prohibi-
> tion need not be all-embracing."

We can find nothing in the definition of an emigrant agent or the other provisions of Senate Bill No. 127 which would indicate that the Act was passed to apply to the type of institutions referred to in your inquiry. If the institution's true purposes are those of a non-profit, charitable, religious, benevolent and educational institution then its "business" could hardly be said to come within the provisions of Section 1 of the Emigrant Agency Act. This we think is true even though in carrying out its real and primary purposes, it incidentally rendered some service which an Emigrant Agent might perform. In view of the history of the services rendered by such institutions, which the Legislature must have known at the time of the passage of the Act, and the fact that the Legislature in the "Emigrant Agents Act," itself, provides in Section 8 that "the provisions of this Act shall be cumulative of the Employment Agency Law of the State of Texas and the Employment Agency Law aforesaid shall be where consistent, applicable to the provisions of this Act," we do not believe the Legislature intended to change its previously declared public policy so as to include such institutions strictly within the scope of Senate Bill No. 127. We do not believe the evil aimed at and sought to be regulated by the provisions of Senate Bill No. 127 included the helpful and incidental services rendered by a non-profit, charitable, religious, educational and benevolent institution. Neither can we say that the provisions of Article 5209 of the Employment Agent Act are inconsistent with the definition and provisions of the Emigrant Agents Act.

We believe that with due regard given to the exceptions as contained in Article 5209 as being applicable to the provisions of Senate Bill No. 127, the "Employment Agents Act" and the "Emigrant Agents Act" can be construed harmoniously together and can

671

be properly administered and enforced so as to regulate the evils sought to be controlled by the respective Acts.

For all of the foregoing reasons, it is our opinion, and you are so advised, in answer to your question, that the exceptions of Article 5209, Revised Civil Statutes, 1925, are applicable to and are proper exceptions to the provisions of Senate Bill No. 127, passed by the Acts of the 41st Legislature, Second Called Session, 1929, Page 203, and the institution inquired about, under the facts in your inquiry, would not be required to obtain an "Emigrant Agents" license.

We trust that we have fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 2, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By Harold M. Cracken

Harold McCracken
Assistant

HM:RS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN